IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 20-_____ |
| v. | : | DATE FILED: _____ |
| BRANDEN COLUCCIO | : | VIOLATIONS:<br>18 U.S.C. § 371 (conspiracy to |
| | : | commit health care fraud – 1 count)<br>Notice of forfeiture |

## INFORMATION

### COUNT ONE

(Conspiracy)

THE UNITED STATES ATTORNEY CHARGES THAT:

At all times material to this information:

1. Liberation Way was an entity which purported to provide treatment for individuals suffering from drug and alcohol addiction. Defendant Branden Coluccio, Jason Gerner, charged elsewhere, and Person #2 (now deceased) founded Liberation Way in early 2015. Liberation Way had treatment centers in Yardley, opened in July 2015, Bala Cynwyd, opened in June 2016, and Fort Washington, opened in August 2016, all in the Eastern District of Pennsylvania. Liberation Way facilities provided only out-patient services, and none of the facilities were licensed to do maintenance or in-patient treatment.

2. Independence Blue Cross and Amerihealth plans, were private insurance companies and health care benefit programs (collectively, "the Health Care Benefit Programs") as defined in 18 U.S.C. § 24(b), that is, they were private plans and contracts, affecting

commerce, under which medical benefits, items, and services were provided to eligible individuals.

3. Liberation Way was in "out-of-network" status with Independence Blue Cross plans, that is, Liberation Way was a health care provider not participating under insurance plans for insureds who utilized Liberation Way services, and, as such, the Health Care Benefit Programs paid significantly higher fees for their insureds who utilized Liberation Way services and testing by laboratories in Florida to which Liberation Way sent blood and urine samples of the patients.

4. Independence Blue Cross serviced customers in a five-county area in Pennsylvania, and AmeriHealth was an Independence Blue Cross subsidiary that serviced customers in New Jersey (both collectively referred to as "IBC"). IBC did not accept third party payments for a customer's insurance premiums unless from a family member or if made by a bona fide religious institution or other bona fide not-for-profit organization, and only from such a bona fide institution or organization which met the following criteria:

> a) the assistance [was] provided on the basis of the insured's financial need;
> b) the institution or organization [was] not a health care provider or supplier;
> c) the premium payments and any Cost-Sharing Program cover an entire policy year; and
> d) the institution or organization [did] not have any direct or indirect financial interest.

IBC clearly posted this Third Party Payment Policy on its website and required applicants to acknowledge that they accepted IBC's Conditions of Enrollment when applying, along with this advisory: "Any person who knowingly and with intent to defraud any insurance company or

other person files an application for insurance or statement of claim containing any material false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalty."

5. Medical providers providing care and treatment to patients at Liberation Way facilities were required to certify that (1) the services provided were medically necessary, (2) the services were personally provided by the person signing the form, or by one of his/her employees acting under the signer's direction, and (3) the information contained in the form was true, accurate, and complete. The provider's National Provider Identification ("NPI") number was included as a part of each submission.

6. A-Lab, C-Lab, DB-Lab, O-Lab, and AD-Lab were laboratories in the state of Florida that provided urine sample testing and billed insurance companies for their services. C-Lab, DB-Lab, and O-Lab all operated out of the same Florida address. Testing can be either "presumptive" or "definitive." Presumptive testing determined the drug that was in the patient's system. Definitive, also known as qualitative, testing determined the exact drug, and how much of it was in the sample.

7. Based on the fraudulent claims that defendant BRANDEN COLUCCIO conspired to submit, and caused to be submitted to the Health Care Benefit Programs, the Health Care Benefit Programs made payments to Liberation Way and its associated entities, laboratories, and insured individuals. The fraudulent claims were for purported medical services for patients for whom Liberation Way personnel fraudulently obtained premium insurance

policies from IBC.

## The Conspiracy

8. From in or about Fall 2015 through in or about the Fall of 2016, in the Eastern District of Pennsylvania and elsewhere, defendant

**BRANDEN COLUCCIO**

conspired and agreed, with others known and unknown to the United States Attorney, to knowingly and willfully execute a scheme to defraud health care benefit programs, and to obtain money and property of health care benefit programs by means of false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items and services, by causing to be submitted fraudulent health care insurance claims, in violation of Title 18, United States Code, Section 1347.

## Manner and Means

It was part of the conspiracy that:

9. Defendant BRANDEN COLUCCIO, Jason Gerner, charged elsewhere, and Person #2 founded and designed Liberation Way to operate in an "out-of-network" status for private insurers, thereby amassing large amounts of money in a short amount of time. It was further part of the scheme to target and recruit patients who either had policies with the Health Care Benefit Programs, or for whom a premium policy for health care benefits could be fraudulently obtained from IBC, in order to maximize patient intake, maximize patient billing, and maximize monetary profit, all designed to defraud the Health Care Benefit Programs.

10. Defendant BRANDEN COLUCCIO, along with Jason Gerner, Person #2,

and Domenick Braccia, charged elsewhere, were investors in Liberation Way, and as significant equity partners, stood to gain financially from increased business and billing at Liberation Way.

11. In establishing Liberation Way, defendant BRANDEN COLUCCIO, Jason Gerner, and Person #2 accepted only premium insurance policies, and did not accept any patients who had insurance through Medicare, Medicaid, or managed through Health Maintenance Organizations. When a patient did not have appropriate premium insurance, defendant COLUCCIO, Gerner, Person #2, and others known to the United States Attorney sometimes paid for a premium insurance policy with IBC for the patient, in violation of the Conditions of Enrollment with IBC and in violation of IBC's Third Party Payment Policy, in order that the patient be able to attend treatment at Liberation Way and in order that Liberation Way be able to bill IBC for services, further arranging for such patients to reside at a Liberation Way run "sober home." The resulting payments made by IBC vastly outweighed the cost of the monthly insurance premiums. Defendant COLUCCIO, Gerner, Person #2, Person #8, and others known to the United States Attorney paid the monthly premiums to IBC directly, reimbursed a patient's family member who in turn paid IBC, and paid for debit cards to be used when applying for and paying the premiums.

12. Jason Gerner initially paid for premium IBC insurance policies for some Liberation Way patients, in violation of IBC's Conditions of Enrollment and Third Party Payment Policy, using an account he had previously established, named Hope for Families. Hope for Families was not a bona fide religious institution nor a bona fide not-for-profit organization.

13. Defendant BRANDEN COLUCCIO, Jason Gerner, Person #2, Person #7, and others known to the United States Attorney, thereafter created a separate fund named "Leaf Healthcare" solely for the purpose of paying for premium IBC insurance policies for some Liberation Way patients, in violation of IBC's Conditions of Enrollment and Third Party Payment Policy. The Leaf Healthcare fund was ostensibly separate from Liberation Way, but in fact was funded by defendant COLUCCIO, Person #2, and others known to the United States Attorney, sometimes with Liberation Way funds. Defendant COLUCCIO, Jason Gerner, Person #2, and Person #7 hired Person #8 to run Leaf Healthcare. Defendant COLUCCIO and Person #2 disguised their connection to the funding of Leaf Healthcare by writing checks to Person #8 and others, and instructing them to cash the checks, with the proceeds to be deposited into the Leaf Healthcare account. Defendant COLUCCIO, Gerner, Person #2, and others known to the United States Attorney used the Leaf Healthcare fund only to pay for premium IBC insurance policies for some Liberation Way patients, in violation of IBC's Conditions of Enrollment and Third Party Payment Policy.

14. Defendant BRANDEN COLUCCIO, Jason Gerner, Person #2, and other persons known to the United States Attorney rented, and sometimes purchased, locations to use as "sober homes" in order to house their Liberation Way patients, and provided housing to many of their patients, frequently at no cost to the patient. Although ostensibly separate entities, these "sober home" locations were funded solely by Liberation Way funds, and only patients attending Liberation Way treatment locations were permitted to live in these "sober homes," all in order to ensure that the patients attended treatment, which, consequently, allowed Liberation Way to bill

for services. Also, as an out-of-network provider, Liberation Way needed to control their patient population in order to obtain insurance checks sometimes mailed directly to the patient. All patients funded by Leaf Healthcare were required to reside at one of the "sober homes."

15. Defendant BRANDEN COLUCCIO, and others known and unknown to the United States Attorney, caused to be submitted fraudulent claims to IBC for patients at Liberation Way for whom defendant COLUCCIO, and others known and unknown to the United States Attorney, had fraudulently acquired an IBC insurance policy in violation of IBC's Conditions of Enrollment and Third Party Payment Policy.

16. As a result of this fraudulent scheme, defendant BRANDEN COLUCCIO conspired to submit and caused to be submitted fraudulent claims to the Health Care Benefit Programs of approximately $11,263,263 and caused the Health Care Benefit Programs to incur losses of approximately $3,070,187.

### Overt Acts

In furtherance of the conspiracy and to accomplish its objects, defendant

**BRANDEN COLUCCIO,**

and others known and unknown to the United States Attorney committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1. In or about early 2015, defendant BRANDEN COLUCCIO, Jason Gerner, and Person #2 agreed that they would found Liberation Way, an entity which was intended to provide treatment for individuals dealing with drug and alcohol addiction, in the Eastern District of Pennsylvania.

2.  In or about the Spring of 2015, defendant BRANDEN COLUCCIO and Jason Gerner approached Domenick Braccia and solicited him to be both an investor in Liberation Way and the staff doctor for Liberation Way patients.

3.  In or about the Summer of 2015, defendant BRANDEN COLUCCIO, Jason Gerner, Person #2, and Domenick Braccia provided money for the start-up Liberation Way, each becoming a significant equity owner in Liberation Way.

4.  In or about July of 2015, defendant BRANDEN COLUCCIO, Jason Gerner, and Person #2 opened a Liberation Way treatment center in Yardley, Pennsylvania.

5.  In or about June of 2016, defendant BRANDEN COLUCCIO, Jason Gerner, and Person #2 opened a Liberation Way treatment center in Bala Cynwyd, Pennsylvania.

6.  In or about August of 2016, defendant BRANDEN COLUCCIO, Jason Gerner, and Person #2 opened a Liberation Way treatment center in Fort Washington, Pennsylvania.

### Paying for Patients' Insurance to Increase Enrollment and Payments from Health Care Benefit Programs

7.  From in or about August 2015 through in or about February 2016, defendant JASON GERNER utilized the Hope for Family fund to pay for insurance policies with IBC, for patients who attended Liberation Way for treatment, in violation of IBC's Conditions of Enrollment and Third Party Payment Policy.

8.  In or about Fall 2015, defendant BRANDEN COLUCCIO, Jason Gerner, Person #2, and Person #7, all known to the United States Attorney, discussed creating a fund separate from Hope for Families that they would fund, in order to more systematically pay for

IBC insurance policies for patients without insurance in order that the patients would attend Liberation Way rehabilitation facilities.

In or about January 2016:

9. Defendant BRANDEN COLUCCIO, Jason Gerner, Person #2, and Person #7, all known to the United States Attorney, agreed to create, and created, a fund to pay for IBC insurance policies for patients without insurance so that the patients would attend Liberation Way rehabilitation facilities. To conceal their relationship to this fund, defendant BRANDEN COLUCCIO, Jason Gerner, Person #2, and Person #7, agreed to hire Person #8, known to the United States Attorney, not then connected to Liberation Way, to run the fund.

10. Defendant BRANDEN COLUCCIO, Jason Gerner, and Person #2, and Person #7 interviewed Person #8 and hired him for the position of "Director" of Leaf Healthcare. Defendant BRANDEN COLUCCIO, Jason Gerner, and Person #2 instructed Person #8 to open a bank account in the name of "Leaf Healthcare," to deposit the checks provided to him into the Leaf Healthcare account, to pay himself a weekly salary from the Leaf Healthcare account, and to use the Leaf Healthcare funds to purchase IBC policies for patients who would attend Liberation Way rehabilitation facilities. Person #8 was instructed to refer to Leaf Healthcare's payment of IBC policies as "scholarships," and to offer these "scholarships" to any patient referred to Person #8 by Liberation Way marketing staff where the prospective Liberation Way patient who had no insurance.

On or about January 21, 2016:

11. Defendant BRANDEN COLUCCIO, wrote a check for $10,000 on his

9

personal account, made out in Person #8's name, on which defendant COLUCCIO falsely noted that the $10,000 was a "personal loan," and defendant COLUCCIO and Person #2 instructed Person #8 to cash the check in his own account and then deposit the proceeds of the check into the Leaf Healthcare account.

12. Person #2 wrote a check for $10,000 on Person #2's personal account, made out in Person #8's name, on which Person #2 falsely noted that the $10,000 was a "business loan," and defendant BRANDEN COLUCCIO and Person #2 instructed Person #8 to cash the check in his own account and then deposit the proceeds of the check into the Leaf Healthcare account.

13. On or about January 29, 2016, Person #8 withdrew $20,000 from his personal account into which he had deposited the two $10,000 checks that had been given him by defendant BRANDEN COLUCCIO and Person #2 to fund Leaf Healthcare, and opened an account in the name of Leaf Healthcare, into which Person #8 deposited $20,000 cash.

14. In or about February 2016, using the Leaf Healthcare bank account, funded by Liberation Way principals, defendant BRANDEN COLUCCIO, and Person #2, Person #8 began paying for IBC insurance policies for patients referred to him by Liberation Way marketing staff.

15. On or about March 21, 2016, Person #2 wrote a check for $12,500 on Person #2's personal account, made out in Person #8's name, on which Person #2 falsely noted that the $12,500 was a "business loan," and defendant BRANDEN COLUCCIO, and Person #2 instructed Person #8 to cash the check and then deposit the proceeds of the check into the Leaf

Healthcare account.

On or about March 22, 2016:

16. Defendant BRANDEN COLUCCIO wrote a check for $12,500 on his personal account, made out in Person #8's name, on which defendant COLUCCIO falsely noted that the $12,500 was a "personal loan," and defendant COLUCCIO, and Person #2 instructed Person #8 to cash the check and then deposit the proceeds of the check into the Leaf Healthcare account.

17. Person #8 deposited the proceeds of these two checks given him by defendant BRANDEN COLUCCIO and Person #2, totaling $25,000, into the Leaf Healthcare account.

On or about April 21, 2016:

18. Defendant BRANDEN COLUCCIO wrote a check for $13,200 on the Liberation Way LLC business account, made out in Person #7's name, on which defendant COLUCCIO falsely noted that the $13,200 was for "April Consulting," and defendant COLUCCIO instructed Person #7 to deposit the check into Person #7's personal account and then write a personal check to Leaf Healthcare.

19. Per defendant BRANDEN COLUCCIO's instructions, Person #7 deposited the Liberation Way LLC check for $13,200 signed by defendant COLUCCIO into Person #7's personal bank account, and Person #7 wrote a check for $13,200 payable to Leaf Healthcare.

20-48. From in or about February 2016 through in or about August 2016, and on

or about the dates noted below, defendant BRANDEN COLUCCIO, Jason Gerner, and Person #2 paid for, or caused to be paid for, insurance policies with IBC, in violation of IBC's Conditions of Enrollment and Third Party Payment Policy, so the below-noted patients, identified by initials, would attend Liberation Way for treatment, and defendant COLUCCIO, Jason Gerner, and Person #2 could have Liberation Way and Florida laboratories submit claims for purported treatment for each patient, resulting in over $8.3 million billed to IBC, and IBC paying approximately $2,536,529, for these patients as a result of the fraudulently purchased policies. Person #8 made the first payment for each policy using the Leaf Healthcare account ending in #1976:

| Overt Act# | Patient Initials | Application Date / First Payment | Effective Date of IBC Policy | Date canceled for Non-Payment | First Claim by Liberation Way | Last Claim by Liberation Way |
|---|---|---|---|---|---|---|
| 20 | W.C. | 02-29-2016 | 03-01-2016 | 04-01-2016 | 03-21-2016 | 04-05-2016 |
| 21 | J.D. | 02-29-2016 | 03-01-2016 | 05-01-2016 | 03-11-2016 | 04-06-2016 |
| 22 | S.H. | 02-29-2016 | 03-01-2016 | 07-01-2016 | 03-11-2016 | 08-22-2016 |
| 23 | C.H. | 02-29-2016 | 03-01-2016 | 04-01-2016 | 02-16-2016 | 06-30-2016 |
| 24 | R.L. | 02-29-2016 | 03-01-2016 | 04-01-2016 | 04-11-2016 | 05-05-2016 |
| 25 | P.S. | 02-29-2016 | 03-01-2016 | 04-01-2016 | 03-22-2016 | 04-13-2016 |
| 26 | M.W. | 02-29-2016 | 03-01-2016 | 07-01-2016 | 03-15-2016 | 08-04-2016 |
| 27 | L.A. | 03-14-2016 | 03-15-2016 | 07-01-2016 | 03-16-2016 | 06-06-2016 |
| 28 | J.B. | 03-14-2016 | 03-15-2016 | 04-01-2016 | 03-23-2016 | 05-05-2016 |
| 29 | J.H. | 03-14-2016 | 03-15-2016 | 04-01-2016 | 03-28-2016 | 03-28-2016 |
| 30 | T.L. | 03-14-2016 | 03-15-2016 | 07-01-2016 | 03-29-2016 | 06-07-2016 |
| 31 | M.M. | 03-14-2016 | 03-15-2016 | 04-01-2016 | 03-20-2016 | 07-29-2016 |
| 32 | J.R. | 03-14-2016 | 03-15-2016 | 04-01-2016 | 03-28-2016 | 05-13-2016 |
| 33 | J.R. | 03-14-2016 | 03-15-2016 | 06-01-2016 | 03-28-2016 | 10-05-2016 |
| 34 | A.W. | 03-14-2016 | 03-15-2016 | 07-01-2016 | 03-28-2016 | 08-22-2016 |
| 35 | K.D. | 03-31-2016 | 04-01-2016 | 05-01-2016 | 04-01-2016 | 04-14-2016 |
| 36 | R.F. | 03-31-2016 | 04-01-2016 | 05-01-2016 | 04-14-2016 | 05-13-2016 |
| 37 | O.M. | 03-31-2016 | 04-01-2016 | 07-01-2016 | 04-11-2016 | 07-26-2016 |
| 38 | S.P. | 03-31-2016 | 04-01-2016 | 05-01-2016 | 04-14-2016 | 07-13-2016 |
| 39 | K.P. | 03-31-2016 | 04-01-2016 | 05-01-2016 | 04-11-2016 | 06-16-2016 |

| 40 | V.S. | 03-31-2016 | 04-01-2016 | 05-01-2016 | 04-13-2016 | 06-23-2016 |
| 41 | D.S. | 04-14-2016 | 04-15-2016 | 08-01-2016 | 04-26-2016 | 09-30-2016 |
| 42 | J.P. | 04-30-2016 | 05-01-2016 | 06-01-2016 | 05-25-2016 | 05-31-2016 |
| 43 | J.S. | 04-30-2016 | 05-01-2016 | 05-01-2016 | 05-02-2016 | 10-04-2016 |
| 44 | L.S. | 04-30-2016 | 05-01-2016 | 09-01-2016 | 05-04-2016 | 08-31-2016 |
| 45 | A.O. | 05-31-2016 | 06-01-2016 | 09-01-2016 | 06-01-2016 | 02-17-2017 |
| 46 | K.S. | 05-31-2016 | 06-01-2016 | 11-01-2016 | 06-01-2016 | 11-30-2016 |
| 47 | K.B. | 06-30-2016 | 07-01-2016 | 09-01-2016 | 07-15-2016 | 10-18-2016 |
| 48 | E.C. | 07-29-2016 (O-E)[1] | 08-01-2016 | 11-01-2016 | 07-20-2016 | 11-09-2016 |

49. In or about April 2016, after an insurance broker warned Person #8 to be "careful" about the Leaf Healthcare account paying for all the IBC policies, Person #2 instructed Person #8 to use other means to pay for the "scholarship" IBC policies, including using money orders to repay a relative of the patient who paid for the patient's IBC policy on their own credit card, and purchasing debit gift cards to be used to pay for patients' IBC policies.

50. In or about Summer 2016, defendant BRANDEN COLUCCIO paid Person #6 a $20,000 raise to work at Liberation Way's headquarter offices in order to assist in managing LEAF because Person #8 was having difficulty keeping up with the management of the various policies and making timely payments on the policies purchased for patients so that they would attend Liberation Way facilities.

51-62. From in or about April 2016 to in or about August 2016, and on or about the dates noted below, defendant BRANDEN COLUCCIO, Jason Gerner, and Person #2 paid for, or caused to be paid for, insurance policies with IBC, in violation of IBC's Conditions of Enrollment and Third Party Payment Policy, so the below-noted patients, identified by initials, would attend Liberation Way for treatment, and defendant COLUCCIO, Jason Gerner, and

---

[1] Policy applied for via the Marketplace exchange; "O-E" refers to "On Exchange."

13

Person #2 could have Liberation Way and Florida laboratories submit claims for purported treatment for each patient, resulting in over $2.9 million being billed to IBC, and IBC paying approximately $533,658, for these patients as a result of the fraudulently purchased policies. Person #8 or Person #6 made the first payment for each policy using money from the Leaf Healthcare account, as well as cash provided by others associated with Liberation Way, to purchase money orders and debit cards, which in turn were used to pay for these policies:

| Overt Act# | Patient Initials | Application Date / First Payment | Effective Date of IBC Policy | Date canceled for Non-Payment | First Claim by Liberation Way | Last Claim by Liberation Way |
|---|---|---|---|---|---|---|
| 51 | J.B. | 04-30-2016 | 05-01-2016 | 08-01-2016 | 08-29-2016 | 09-26-2016 |
| 52 | F.B. | 05-31-2016 | 06-01-2016 | 07-01-2016 | 06-14-2016 | 07-30-2016 |
| 53 | A.M. | 05-31-2016 | 06-01-2016 | 02-01-2017 | 06-13-2016 | 05-20-2017 |
| 54 | D.M. | 02-29-2016 | 03-01-2016 | 04-01-2016 | 01-28-2016 | 06-13-2016 |
| 55 | C.V. | 05-31-2016 | 06-01-2016 | 08-01-2016 | 06-14-2016 | 06-20-2016 |
| 56 | V.M. | 06-30-2016 | 07-01-2016 | 11-01-2016 | 07-18-2016 | 09-30-2016 |
| 57 | M.B. | 07-31-2016 | 08-01-2016 | 10-01-2016 | 08-12-2016 | 10-27-2016 |
| 58 | G.F. | 06-30-2016 (O-E) | 07-01-2016 | 10-01-2016 | 07-25-2016 | 09-30-2016 |
| 59 | K.J. | 06-30-2016 (O-E) | 07-01-2016 | 11-01-2016 | 07-06-2016 | 09-08-2016 |
| 60 | D.B. | 07-29-2016 (O-E) | 08-01-2016 | 03-01-2017 | 04-20-2016 | 11-30-2016 |
| 61 | J.M. | 07-30-2016 (O-E) | 08-01-2016 | 10-01-2016 | 08-10-2016 | 10-22-2016 |
| 62 | W.C. | 07-29-2016 (O-E) | 08-01-2016 | 11-01-2016 | 08-03-2016 | 10-31-2016 |

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violation of Title 18, United States Code, Section 371 set forth in this information, defendant

**BRANDEN COLUCCIO**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court; or

    d. has been substantially diminished in value,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(7).

**WILLIAM M. MCSWAIN**
**United States Attorney**